IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGAN E. KIESSLING, et al.,

              Plaintiffs,

     v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

CIVIL ACTION
NO. 18-4281

## OPINION

**Slomsky, J.**                                                      **February 14, 2019**

## I.     INTRODUCTION

On June 10, 2017, Plaintiffs Megan E. Kiessling ("Kiessling") and Sara Jo Fegley ("Fegley") (collectively, "Plaintiffs") were injured in a motor vehicle accident with an underinsured motorist. Plaintiffs filed separate claims for underinsured motorist benefits with Kiessling's automobile insurer, Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). Defendant disputed the amount owed to Kiessling and Fegley in underinsured motorist benefits, which led to Plaintiffs filing this action.

On September 4, 2018, Plaintiffs filed a Complaint against Defendant in the Court of Common Pleas of Philadelphia County. In Counts I and II of the Complaint, Plaintiffs respectively seek judgment in their favor for underinsured motorist benefits. In Count III of the Complaint, Plaintiffs allege that Defendant's handling of their underinsured motorist claims was in bad faith pursuant to Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371.

On October 3, 2018, Defendant removed the case to this Court. (Doc. No. 1.) Before the Court is Defendant's Motion to Dismiss Count III of the Complaint under Federal Rule of Civil

Procedure 12(b)(6). For the reasons set forth below, the Court will grant Defendant's Motion (Doc. 4) and dismiss Count III of the Complaint.

## II.    BACKGROUND[1]

On June 10, 2017, at approximately 4:50 a.m., an underinsured motor vehicle struck Kiessling's 2014 Nissan Versa as she was driving northbound on Interstate 95 with Fegley in the passenger seat. (Doc. No. 4 at 18, ¶¶ 5-6.) As a result of the accident, both Plaintiffs suffered serious bodily injuries, including head injuries and damage to their nervous systems. (Id. at 19-20, ¶¶ 9, 16.) In the Complaint, Plaintiffs allege that the value of their injuries exceeded the liability limits of the policy belonging to the underinsured motorist who caused the accident:

> As a result of the aforesaid motor vehicle collision, Plaintiff, Megan Kiessling, sustained bodily injuries having a value in excess of per person limits of liability in place on the aforementioned underinsured motor vehicle in the amount of $25,000.00.

(Id. at 19, ¶ 10; id. at 20, ¶ 17 (making same allegation as to Fegley).) Plaintiffs each submitted claims to Defendant for underinsured motorist benefits to make up for the shortfall in coverage left by the underinsured motorist's policy. (Id. at 20-21, ¶¶ 12, 19.) The terms of Kiessling's automobile insurance policy with Defendant provided for underinsured motorist coverage in an amount up to $250,000 per person and $500,000 per accident. (Id. at 19, ¶ 10.)

At some time after Plaintiffs submitted claims to Defendant, Defendant disputed the amount they were entitled to recover. The Complaint does not specify the amount in dispute or any facts surrounding the dispute itself, but Plaintiffs simply allege that they and "State Farm have failed to agree on the amount of underinsured motorist benefits" owed to them. (Id. at 20-21, ¶¶ 13-14, 20-21.)

---

[1]  The facts are taken from the Complaint and are accepted as true for purposes of deciding the Motion to Dismiss. Phillips v Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

Consequently, on September 4, 2018, Plaintiffs initiated this action against Defendant in the Philadelphia County Court of Common Pleas. (Id. at 16.) In Counts I and II of the Complaint, Kiessling and Fegley, respectively, demand judgment against Defendant for underinsured motorist benefits. (Id. at 17-21.) In Count III of the Complaint, Plaintiffs allege that Defendant's handling of their claims was in bad faith under the Pennsylvania bad faith statute, 42 Pa. Cons. Stat. § 8371. (Id. at 21-22.) More specifically, Plaintiffs allege that Defendant acted in bad faith by failing to (1) negotiate Plaintiffs' underinsured claim; (2) properly investigate and evaluate Plaintiffs' underinsured claim; and (3) request a defense medical examination of the Plaintiffs. (Id.) Though the Complaint is devoid of facts regarding Defendant's investigation, responses, or offers of payment, Plaintiffs claim that Defendant lacked a reasonable basis for disputing their claims because "[t]here is no dispute in this case that the accident was the fault of the underinsured driver and that Plaintiffs are entitled to underinsured motorist coverage under the applicable policy with State Farm." (Id.)

On October 3, 2018, Defendant removed the case to this Court based on diversity of citizenship jurisdiction. (Doc. No. 1.) On October 5, 2018, Defendant filed a Motion to Dismiss Count III of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 4.) On October 9, 2018, Plaintiffs filed a Response in Opposition. (Doc. No. 5.)

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal,

556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.    ANALYSIS

Defendant argues Count III of the Complaint should be dismissed because Plaintiffs' "bald and conclusory assertions of bad faith liability on the part of State Farm, made without any factual support, fail to meet the pleading standard required by the Federal Rules of Civil Procedure . . . ." (Doc. No. 4 at 2.)  For the reasons that follow, the Court agrees.

Pennsylvania's bad faith statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Const. Stat. § 8371.  The statute does not define "bad faith," but the Pennsylvania Superior Court defines bad faith on the part of an insurer as "any frivolous or unfounded refusal to pay proceeds of a policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. Oct. 25, 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)).

Accordingly, to succeed on a bad faith claim, "a plaintiff must allege that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." Yandrisovitz v. Ohio State Life Ins. Co., No. 18-1036, 2018 WL 4203840, at *4 (E.D. Pa. Aug. 31, 2018) (citing W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003)).  The insurer's conduct need not be fraudulent, but "'mere negligence or bad judgment is not bad faith.'" Northwestern Mut. Life Ins. Co. v.

Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. 2004)).  "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'"  Id.

Because bad faith claims are fact-specific, to survive a motion to dismiss "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements."  Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing Smith v. State Farm Mut. Auto. Ins. Co., 506 Fed. App'x 133, 136 (3d Cir. 2012)).  To that end, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair."  Id.

In this case, the Complaint fails to state a plausible statutory bad faith claim.  In the Complaint, Plaintiffs allege that Defendant's handling of their claims for underinsured motorist benefits was in bad faith because Defendant failed to: (1) negotiate their underinsurance claims, (2) properly investigate and evaluate their claims, and (3) request that Plaintiffs submit to a defense medical examination.  (Doc. No. 4 at 21-22.)  Plaintiffs further allege that Defendant had no reasonable basis to dispute the amount owed to them in underinsured motorist benefits because Plaintiffs "were entitled to underinsured motorist coverage" since "the accident was the fault of the underinsured driver."  (Id.)  According to Plaintiffs, these allegations, taken together, prove bad faith on the part of State Farm.  (Doc. No. 5 at 9-10.)

The Court is not persuaded by Plaintiffs' argument.  Multiple decisions from this district have held that allegations nearly identical to the ones asserted by Plaintiffs are insufficient to state a plausible claim for bad faith.  For example, in Jones v. Allstate Ins. Co., another case originating from a dispute over underinsured motorist benefits, the court dismissed plaintiff's claim for bad faith under Rule 12(b)(6).  No. 17-648, 2017 WL 2633472, at *1 (E.D. Pa. June 19, 2017).  There, plaintiff sued defendant for breach of contract and bad faith stemming from the parties' failure to

agree on the amount of underinsured motorist benefits owed to plaintiff. Id. at *1. The plaintiff

alleged that even though he had "fully complied with the terms of [his] policy", defendant had

acted in bad faith by failing to:

> (1) act with reasonable promptness in evaluating and responding to his claim and reasonable fairness in paying the claim, (2) negotiate his claim, (3) properly investigate and evaluate his claim and (4) request a defense medical examination of him.

Id. The court dismissed the bad faith claim, holding that plaintiff's allegations were insufficient

to "raise the claim[] to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss."

See id. at *2-3 (collecting cases in which courts similarly dismissed statutory bad faith claims

based on "bare-bones" conclusory allegations lacking factual support).

Likewise, in McDonough v. State Farm Fire & Cas. Co., the court dismissed the plaintiff's

statutory bad faith claim, finding:

> Here, McDonough's complaint fails to state a plausible statutory bad faith claim. He alleges no factual content indicating that State Farm lacked a reasonable basis for its tendered offer or that it knew or recklessly disregarded a lack of reasonable basis for the offer. Rather, McDonough makes conclusory statements that State Farm unreasonably withheld the payment of underinsured motorist benefits under the policy, failed to make a reasonable offer of settlement, presented a low offer of settlement, failed to engage in good faith negotiations, presented an offer of less than the amount due in an attempt to compel him to institute litigation, and failed to perform an adequate investigation of the value of his claim for underinsured motorist benefits.

No. 18-2247, 2019 WL 480139, at *3 (E.D. Pa. Feb. 7, 2019).

Finally, the court in Kosmalski v. Progressive Preferred Ins. dismissed the plaintiff's

statutory bad faith claim premised on allegations like the ones asserted by Kiessling and Fegley in

this case. No. 17-5726, 2018 WL 2045827, at *1 (E.D. Pa. May 2, 2018). In Kosmalski, the

plaintiff alleged the following with respect to his bad faith claim:

> Komalski further claims that Progressive acted in bad faith by unreasonably refusing the pay the full policy limits of his underinsured motorist coverage and,

among other things, failing to (1) evaluate his claim objectively and fairly, (2) complete a prompt and thorough investigation of his claim, (3) pay for his loss in a prompt and timely manner, (4) reasonably and adequately evaluate or review the medical documentation, and (5) keep him fairly and adequately advised on the status of his claim.

Id. at *1.  The court dismissed plaintiff's bad faith claim, finding his allegations to be "conclusory" and "unsupported."  Id. at *2.

Like the plaintiffs in Jones, McDonough, and Kosmalski, Plaintiffs in this case have rested their claim for bad faith on conclusory allegations that are missing the requisite factual support to survive a motion to dismiss.  For example, Plaintiffs allege in the Complaint that Defendant did not properly investigate their claims for underinsured motorist benefits, and yet fail to allege what type of investigation Defendant undertook and how that investigation was improper.  Without additional facts regarding Plaintiffs' insurance claims and Defendant's subsequent investigations, negotiations, and offer(s) or communications, the Court cannot plausibly infer that Defendant acted in bad faith in disputing the amount of underinsured motorist benefits due to Kiessling and Fegley.

Accordingly, because Plaintiffs have not stated a plausible claim of bad faith under § 8371, the Court will dismiss Count III of the Complaint.[2]

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 4) will be granted. An appropriate Order follows.

---

[2]  The Court will dismiss Count III of the Complaint without prejudice and allow Plaintiffs twenty-one (21) days to file an Amended Complaint, specifically amending Count III.  Plaintiffs should only amend Count III if they can support their claim for bad faith with factual allegations above and beyond what is alleged in the dismissed Count.